**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCISCO IZURIETA and GUIDO TORRES, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>DOMINGUEZ LOGISTICS, LLC, and DORIAN DOMINGUEZ,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, FRANCISCO IZURIETA and GUIDO TORRES (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants DOMINGUEZ LOGISTICS, LLC, ("Corporate Defendant") and DORIAN DOMINGUEZ ("Individual Defendant", and together with Corporate Defendant, "Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiffs allege that, pursuant to the Fair Labor Standards Act ("FLSA"), they and others similarly situated are entitled to recover from Defendant: (1) unpaid minimum wages, due to the misclassification of non-exempt employees as independent contractors; (2) compensation for late payment of wages, (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendant: (1) unpaid minimum wages, due to the misclassification of non-exempt employees as independent contractors; (2) compensation for late payment of wages, (3) statutory penalties, (4) liquidated damages; and (5) attorneys' fees and costs.

3. Plaintiffs further allege that Defendants breached their contract with Plaintiffs and Class Members by failing to pay the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable.

4. Plaintiffs further allege that Defendants breached their contract with Plaintiffs and Class Members by failing to pay the employer payroll taxes for Plaintiffs and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Defendants' paid Plaintiffs and Class Members via electronic money transfer (P2P), without accompanying wage statements and without filing W-2.

5. Plaintiffs also allege that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiffs and Class Members.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, as well as under Section 16(b) of the FLSA, as amended 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Corporate Defendant is headquartered in this State and because the events giving rise to this action took place in this District.

## PARTIES

8. Plaintiff FRANCISCO IZURIETA is a resident of Bronx County, New York.

9. Plaintiff GUIDO TORRES is a resident of Queens County, New York.

10. Corporate Defendant DOMINGUEZ LOGISTICS, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process at 2037 Hughes Avenue, Apt 12A, Bronx, NY 10457.

11. Corporate Defendant DOMINGUEZ LOGISTICS, LLC does business as a subcontractor for Internet providers, offering fiber optic cable installation services throughout the New York City Metropolitan Area.

12. Individual Defendant DORIAN DOMINGUEZ is the owner of Corporate Defendant DOMINGUEZ LOGISTICS, LLC. DORIAN DOMINGUEZ exercises operational control as it relates to all employees, including Plaintiffs, FLSA Collective Plaintiffs, and Class Members. DORIAN DOMINGUEZ goes to many of the work sites of the Company and oversees and directs employees. DORIAN DOMINGUEZ exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. DORIAN DOMINGUEZ's control over Corporate Defendant DOMINGUEZ LOGISTICS, LLC's operations is evidenced by his method of compensating Plaintiff TORRES by Zelle from his personal bank account. *See* **Exhibit A**. At all times, employees of the Company may complain to DORIAN DOMINGUEZ directly regarding any of the terms of their employment, and DORIAN DOMINGUEZ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. DORIAN DOMINGUEZ exercised

functional control over the business and financial operations of the Company. DORIAN DOMINGUEZ had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

13. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

14. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

15. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all employees improperly misclassified as exempt and treated as independent contractors, including but not limited to fiber optic cable installers, among others, employed by Defendants on or after the date that is six (6) years before the filing of this Complaint ("FLSA Collective Plaintiffs").

17. At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them at the federal minimum wage. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

18. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message, to the last contact known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

19. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all employees improperly misclassified as exempt and treated as independent contractors, including but not limited to fiber optic cable installers, among others, employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

20. The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. There is no doubt that there are more than forty Class Members in the Class. Plaintiffs are members of the Class.

22. Plaintiffs' claims are typical of claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the

Class or in separate actions. All Class Members were subject to the same corporate practices of Defendants of: (1) failure to pay proper wages, due to misclassification of non-exempt employees as exempt, (2) failure to pay the agreed-upon installation compensation and the employer payroll taxes, (3) failure to pay Plaintiffs their wages within seven (7) days of the end of the week in which they earned them, (4) failure to pay proper wage statements, and (5) failure to provide proper wage and hour notices.

23. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the

wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants required Plaintiffs and the Class Members to engage in;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class Members for their work;

d) Whether Defendants properly compensated Plaintiffs and Class Members for

all hours worked;

e) Whether Defendants failed to pay Plaintiffs and Class Members proper wages, including overtime, due to misclassification as independent contractors;

f) Whether Defendants failed to pay Plaintiffs and Class Members proper minimum wages, due to misclassification as independent contractors;

g) Whether Defendants tracked and paid Plaintiffs and Class Members for their actual hours worked;

h) Whether Defendants breached their contract with Plaintiffs and Class Members by failing to pay employer payroll taxes for Plaintiffs and Class Members as required by the FICA;

i) Whether Defendants paid Plaintiffs and Class Members in a timely manner under New York Labor Law § 191;

j) Whether Defendants provided proper wage notices to Plaintiffs and Class Members; and

k) Whether Defendants provided proper wage statements to Plaintiffs and Class Members.

## STATEMENT OF FACTS

*Plaintiff IZURIETA*

28. In or around August 2025, Plaintiff IZURIETA was hired to work for Defendants at Dominguez Logistics as a fiber optic cable installer. Plaintiff IZURIETA's employment with Defendants ended in or around September 2025.

29. Plaintiff IZURIETA's schedule varied depending on Defendants' business needs. On average, Plaintiff IZURIETA was scheduled by Defendants to work six (6) hours per day, six (6) days each week, for a total of thirty-six (36) hours per week.

30. Throughout his employment, Plaintiff IZURIETA was to be compensated on a per-job basis under Defendants' rate schedule. Despite this, Plaintiff IZURIETA received no compensation for any of the workweeks he worked for Defendants.

*Plaintiff TORRES*

31. Sometime in summer 2025, Plaintiff TORRES was hired to work for Defendants at Dominguez Logistics as a fiber optic cable installer. Plaintiff TORRES was employed for Defendants for four (4) months, until he resigned due to Defendants' failure to pay his wages.

32. Plaintiff TORRES's schedule varied depending on Defendants' business needs. On average, Plaintiff TORRES was scheduled by Defendants to work six (6) hours per day, six (6) days each week, for a total of thirty-six (36) hours per week.

33. Throughout his employment, Plaintiff TORRES was paid on a per-job basis, pursuant to Defendants' rate schedule. The total pay for these jobs over Plaintiff TORRES's four-month employment period amounted to approximately $1,300.00, bringing Plaintiff TORRES below both the federal and state minimum wages.

*Unpaid Wages, due to Misclassification as Exempt Employees*

34. At all relevant times, Defendants violated state and federal minimum-wage laws by uniformly misclassifying non-exempt workers as independent contractors and, as a result, failing to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members the minimum wages to which they were entitled.

35. Plaintiffs were misclassified as exempt employees, and were compensated based on Defendants' rate schedule regardless of how many hours they worked in a week.

36. Despite being compensated as if they were independent contractors, Defendants supervised and controlled every aspect of Plaintiffs' employment, telling them what to do and when to do it. Plaintiffs worked full-time for Defendants as part of their fiber optic cable installation business, reported to the same supervisor every day, and performed installations at Defendants' clients' residences when directed.

37. That Defendants controlled every aspect of Plaintiffs' employment is made plain through the employment dynamic between Plaintiffs and Defendants:

- **Control Over Work:** Defendants assigned Plaintiffs' daily jobs, supervised Plaintiffs as they worked, evaluated all of Plaintiffs' jobs, and directed Plaintiffs to pick up materials and supplies. Plaintiffs reported to Individual Defendant DORIAN DOMINGUEZ.

- **Control Over Schedule:** Defendants required Plaintiffs to accept all assignments, never decline a job, and report to Defendants' warehouse at the start of every workday.

- **Control over Tools / Materials:** Defendants provided Plaintiffs with all equipment needed to perform their tasks. Moreover, Defendants required Plaintiffs to wear company-branded uniforms.

- **Control Over Profit / Loss:** Plaintiffs could <u>not</u> independently negotiate their rates, hire helpers or subcontract their work, source clients, or pay business expenses out of pocket.

- **Permanency of Employment Relationship:** Plaintiffs worked for Defendants continuously and were expected to be available full-time.

- **Absence of Independent Business Indicators:** Plaintiffs do not have a business license, LLC, or EIN. Nor do they carry their own liability insurance, advertise their own services, or have a business website.

- **Company Policies:** Defendants required Plaintiffs to follow company safety policies, appearance rules, and conduct rules.

38. Instead of compensating Plaintiffs on an hourly basis, while Defendants treated Plaintiffs as independent contractors, Plaintiffs were compensated on a per-job basis, using a formula which tied payment to the amount of fiber optic cable installed.

39. Through Defendants' underpaid labor, Plaintiffs' effective hourly compensation fell below both the applicable state minimum wage of $16.50 per hour and the federal minimum wage of $7.25 per hour for all hours worked.

40. FLSA Collective Plaintiffs and Class Members were subjected to the same employment dynamic as Plaintiffs and were therefore similarly misclassified as independent contractors.

*Late payment of wages*

41. Plaintiffs spent more than 25% of their working time engaged in "physical labor" which qualifies them as manual laborers under the NYLL. Similarly, Class Members were manual workers who spent more than 25% of their working time engaging in "physical labor." Thus, Plaintiffs and Class Members were entitled to their wages no "later than seven calendar days after the end of the week in which wages are earned." *See* NYLL §191.

42. However, Defendants failed to pay Plaintiffs their wages within seven (7) days of the end of the week in which they earned them, in violation of NYLL.

43. Plaintiffs TORRES was paid approximately $1,300 for the entirety of his employment through a few electronic money transfers, whereas Plaintiff IZURIETA was not paid at all.

44. Due to Defendants' improper withholding of compensation earned by Plaintiffs and Class Members, Defendants paid Plaintiffs and Class Members were paid late, in violation of the NYLL and the FLSA. Similarly, payments to FLSA Collective Plaintiffs and Class Members were substantially delayed, often by several months.

*Breach of Contract and Unjust Enrichment Claims*

***FICA taxes:***

45. In violating the Internal Revenue Code by failing to provide W-2 forms, Defendants breached their contract with Plaintiffs and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

46. As a result, Plaintiffs and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

47. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

48. Defendants are liable to Plaintiffs and Class Members for failing to pay FICA taxes for the wages earned by Plaintiffs and Class Members.

49. Defendants also unjustly enriched themselves at the expense of Plaintiffs and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiffs and Class Members.

***Agreed-upon installation compensation:***

50. Defendants breached their agreement with Plaintiffs and Class Members to pay the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable. Plaintiffs worked multiple weeks during which they installed more than 1,000 feet of fiber optic cable, which would have entitled them to at least $2,990 for those weeks alone. Yet Defendants never paid Plaintiffs $2,990 in any such week and, remarkably, did not pay them a total of $2,990 during their entire employment.

51. Similarly, Class Members worked weeks during which they installed more than 1,000 feet of fiber optic cable, but Defendants never paid them the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable.

*WTPA Violations*

52. At all relevant times, Plaintiffs and Class Members never received wage notice from Defendants. They also did not receive any wage statements from Defendants.

53. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

54. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

55. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiffs and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiffs and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiffs and Class Members

which accurately listed the total number of hours Plaintiffs and Class Members actually worked and their proper hourly rate, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the statutory minimum wage or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked and the statutory minimum wage.

56. By failing to report Plaintiffs' and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiffs and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

57. Furthermore, Defendants failed to provide any wage notices to Plaintiffs or Class Members. Once again, had Defendants provided Plaintiffs and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiffs and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

58. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiffs, FLSA Collective Plaintiffs, and Class Members with wage notices and wage statements, in violation of the NYLL.

59. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and Class Members the minimum wage, in violation of the FLSA and the NYLL.

60. Defendants knowingly and willfully operated their business with a policy of failing to provide timely compensation to Plaintiffs and Class Members, in violation of the FLSA and the NYLL.

61. Defendants knowingly and willfully operated their business with a policy of failing to pay employer payroll taxes for Plaintiffs and Class Members, in violation of FICA, which constitutes a breach of contract.

62. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

63. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as fully set forth herein.

64. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

65. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

66. At all relevant times, Defendants had a gross annual revenue in excess of $500,000.

67. At all relevant times, Defendants had a policy and practice of failing to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked at the statutory minimum wage rate, as a result of Defendants' misclassification of non-exempt employees as independent contractors.

68. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of the Court to amend this Complaint to set forth the precise amount due.

69. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs at the statutory minimum wage rate for all hours worked, when Defendants knew or should have known such was due.

70. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

71. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

72. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, compensation for late payment of wages, plus an equal amount as liquidated damages.

73. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

74. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as fully set forth herein.

75. At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

76. At all relevant times, Defendants knowingly and willfully violated Plaintiffs and Class Members' rights by failing to pay wages at the statutory minimum wage rate for all hours worked, due to the misclassification of non-exempt employees as exempt.

77. Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to timely pay them their full weekly wages, as required by NYLL § 191(a)(1).

78. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class Members proper wage notices, at date of hiring and annually thereafter, as required under the NYLL.

79. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class Members accurate wage statements, as required under the NYLL.

80. Due to Defendants' NYLL violations, Plaintiffs and Class Members are entitled to recover from Defendants unpaid minimum wages, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs, and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**BREACH OF CONTRACT**

**(brought individually and on behalf of the Class)**

81. Plaintiffs reallege and incorporate all the foregoing paragraphs of the Complaint as if fully set forth herein and further allege as follows:

82. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153 (2002).

83. When Plaintiffs and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs and Class Members in accordance with all applicable laws.

84. The obligations involved, inter alia, a duty to pay the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable and a duty to comply with the Internal Revenue Code and pay all required FICA taxes.

85. Defendants breached their duty when they failed to pay Plaintiffs and Class Members the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable.

86. Moreover, Defendants breached this duty when they decided to pay Plaintiffs and Class Members via electronic money transfer (P2P) and not file W-2s. As a result, Plaintiffs and

Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT IV**

**UNJUST ENRICHMENT**

**(brought individually and on behalf of the Class)**

87. Plaintiffs reallege and incorporate all the foregoing paragraphs of the Complaint as if fully set forth herein and further allege as follows:

88. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

89. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiffs and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

90. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiffs and Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and the Class, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. A declaratory judgment that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiffs and Class Members;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of unpaid minimum wages, resulting from Defendants' misclassification of non-exempt employees as independent contractors, due under the FLSA and NYLL;

e. An award of liquidated damages as a result of Defendants' willful failure to pay minimum wages pursuant to the FLSA;

f. An award of liquidated damages as a result of Defendants' willful failure to pay minimum wages, pursuant to the NYLL;

g. An award of liquidated damages, interest, and legal fees as a result of Defendants' willful failure to pay Plaintiffs and Class Members timely on a weekly basis as required under NYLL and the FLSA;

h. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i. Contractual damages for Defendants' failure to keep their promise to pay the agreed-upon installation compensation of $2.99 per foot of installed fiber optic cable;

j. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiffs' and Class Members' retirement through FICA contributions;

k. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees;

l. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiffs as Representatives of the Class; and

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: June 25, 2026

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs*
*and the Class*